MOLLY MITCHELL, ISB No. 10035
PERKINS COIE LLP
MMitchell@perkinscoie.com
1111 West Jefferson Street, Suite 500
Boise, Idaho 83702-5391
Telephone: (208) 343-3434
Facsimile: (208) 343-3232

NATHAN VERBISCAR-BROWN (CA SBN: 286377 – *pro hac pending*)
PETER A. SINGLER (CA SBN: 153922 – *pro hac pending*)
SINGLER PROFESSIONAL LAW CORPORATION
103 Johnson Street, P.O. Box 2298
Windsor, California 95492
Telephone: (707) 823-8719
Facsimile: (707) 823-8737
NVB@singler-law.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MYLES DAVIS, an individual, and JANELLE DAHL, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>BLAST PROPERTIES, INC. DBA B&B CUSTOM HOMES, an Idaho Corporation; TYLER BOSIER, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR :<br>1. SPECIFIC PERFORMANCE<br>2. BREACH OF CONTRACT<br>3. FRAUD<br>4. VIOLATION OF IDAHO CONSUMER PROTECTION ACT<br><br>Demand for Jury Trial |

Plaintiffs Myles Davis and Janelle Dahl, allege as follows:

**JURISDICTION**

1. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of a different state than all defendants and the amount in

COMPLAINT - 1

controversy, exclusive of interest or costs, exceeds $75,000.

## VENUE

2.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because all defendants are residents of the State in which the district is located and reside in this district.

## GENERAL ALLEGATIONS

3.     Plaintiff Myles Davis ("Davis") is, and at all times herein mentioned was, an individual residing in the county of Napa, State of California.

4.     Plaintiff Janelle Dahl ("Dahl") is, and at all times herein mentioned was, an individual residing in the county of Napa, State of California. Davis and Dahl are sometimes collectively referred to as "Plaintiffs".

5.     Defendant Blast Properties, Inc. *dba* B&B Custom Homes ("Blast") is an Idaho corporation with its primary place of business in Meridian, Idaho.

6.     Defendant Tyler Bosier ("Bosier") is an individual who at all times relevant resided in Idaho. Bosier is the President and controlling shareholder of Blast. Blast and Bosier are sometimes collectively referred to as "Defendants".

7.     Plaintiffs are unaware of the true names and capacities of Defendants DOES 1 through 50. Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint when said true names and capacities are ascertained.

8.     At all times mentioned herein, each of the Defendants was the agent and/or employee of each of the remaining Defendants and in doing the things herein mentioned was acting within the scope of such agency and/or employment.

**COMPLAINT - 2**

## BACKGROUND

9. In and around December 2020, Plaintiffs entered into a written, Pre-Sold New Construction Real Estate Purchase and Sale Agreement with Blast to purchase a new home to be constructed in the City of Nampa, County of Canyon, Idaho and the property on which it will sit (the "Contract"); specifically, the property that is legally described as Lot No. 14, Block 7, Subdivision Stella's Point in accordance with the plat of record in the office of the County Recorder or alternatively, legally described as: 30-3N-2W SW STELLAS POINT NO 2 LT 14 BLK 7 (the "Property"). A true and correct copy of the Contract is attached hereto as Exhibit A.

10. At or around the time Plaintiffs and Blast entered into the Contract, they executed Addendum #1 B&B Custom Homes Single-Family Home Building Contract ("Addendum 1"). Attached as exhibits to Addendum 1 were Exhibit #1, the warranty for the home, and Exhibit #2, the Plans and Specifications for the home to be constructed (the "Plans"), which included a list titled: B&B Custom Homes Stellas Point Interior & Exterior Standard Features (the "Standard Features"). Addendum 1, with its exhibits, governs the construction of the home on the Property. A true and correct copy of Addendum 1, with its exhibits, is attached hereto as Exhibit B.

11. In particular, the Plans called for additions to the "Electrical Plan". These additions were handwritten on the Plans by Plaintiffs. Bosier, on behalf of Blast, initialed each page of the Plans, including specifically the page with Plaintiffs' handwritten additions.

12. Pursuant to Addendum 1, Blast was to commence construction of the home after Plaintiffs executed Addendum 1, satisfied documentation of loan commitment, and paid the deposit equal to 10% of the purchase price ("Deposit"). Blast was to achieve substantial completion of the home within approximately 150 calendar days of the day concrete was poured.

**COMPLAINT - 3**

13. On or around January 11, 2021, Plaintiffs and Blast executed Addendum 2 to the Contract, pursuant to which Plaintiffs and Blast agreed that the Deposit would be released to Blast immediately. Prior to or around that time, Plaintiffs satisfied documentation of loan commitment. A true and correct copy of Addendum 2 is attached hereto as Exhibit C. The Contract, Addendum #1, and Addendum #2 are collectively referred to as the "Agreement".

14. The total price to be paid by Plaintiffs to Blast for the Property and home under the Agreement is $615,000.

15. Pursuant to the Agreement, the estimated closing date (i.e., title would be conveyed to Plaintiffs and the home would be substantially completed and approved for occupancy) was June 30, 2021 (the "Closing Date")

16. On or about April 12, 2021, concrete was poured on the Property.

17. On or about April 15, 2021, Blast transmitted to Plaintiffs a document titled "Addendum 3" without any prior notice. Addendum 3 was a change to the Agreement by which Blast demanded, *inter alia*, to increase the price by $13,888 to account for materials cost increases and reduce the scope of Blast's work by removing the heated flooring called for by the plans and the agreed upon additions to the Electrical Plan. A true and correct copy of Addendum 3 is attached hereto as Exhibit D.

18. On or about April 19, 2021, Plaintiffs responded to Blast via Plaintiffs' counsel. Plaintiffs rejected Addendum 3 and, in light of the delays in the commencement of work on the Property and the demand by Blast to reduce the project scope and increase its cost, Plaintiffs demanded that Blast provide adequate assurances of its willingness and ability to perform the Agreement. Defendants' counsel responded but would not provide any assurances as demanded.

19. On or about April 26, 2021, Plaintiffs, Blast, and Bosier met in person to discuss

**COMPLAINT - 4**

the project in an attempt to resolve the dispute. Following that meeting, Blast advised Plaintiffs that it would be charging for items on its list of Standard Features that were already part of the Agreement, including insulation for the garage.

20.     On or about May 5, 2021, Blast wrote to Plaintiffs and stated that it would not perform the electrical work as set forth in the Plans. Specifically, Blast would not make the agreed upon handwritten additions to the Electrical Plans. Further, Blast refused to consider any upgrades, change orders, or special requests on the project. This included heated flooring in the bathrooms that was specifically provided for in the Plans.

**FIRST CAUSE OF ACTION**
**Specific Performance**
**(Alleged By Plaintiff Against Blast)**

21.     Plaintiffs refer to and incorporate, as though fully set forth herein, Paragraphs 1-20, inclusive.

22.     Pursuant to the Agreement, Blast was to convey to Plaintiffs the Property, which is a unique piece of land upon which Davis and Dahl intend to live out their retirement and which was specifically selected by them for that purpose. For that reason, an award of damages alone will not suffice.

23.     Plaintiffs performed all obligations due under the Agreement to date and stands ready and able to perform all other obligations under the Agreement.

24.     Blast repudiated the Agreement by no later than May 5, 2021, when it unequivocally refused to construct the project according to Plans.

25.     Plaintiffs were damaged by Blast's repudiation of the Agreement.

26.     Blast's repudiation of the Agreement caused Plaintiffs' damage.

27.     Wherefore, Plaintiffs pray for relief as set forth below.

**COMPLAINT - 5**

## SECOND CAUSE OF ACTION
### Breach of Contract
**(Alleged By Plaintiffs Against Blast)**

28. Plaintiffs refer to and incorporates, as though fully set forth herein, Paragraphs 1-20, inclusive.

29. In the alternative to the First Cause of Action, above, Plaintiffs plead as follows:

30. Plaintiffs performed all obligations due under the Agreement to date and stands ready and able to perform all other obligations under the Agreement.

31. Blast breached and repudiated the Agreement by no later than May 5, 2021, when it unequivocally refused to construct the project according to the Plans.

32. Plaintiffs were damaged by Blast's breach and repudiation of the Agreement.

33. Plaintiffs incurred thousands of dollars in travels costs and fees to select materials, meet with Defendants, and bought appliances and fixtures at Plaintiffs' own expense as an offer to try and appease Defendants and get them to perform. Defendants were informed and knew full well that Plaintiffs were incurring these costs and did not inform Plaintiffs that it intended on repudiating the Agreement or inform Plaintiffs that they would not perform until after Plaintiffs had already incurred these costs.

34. Wherefore, Plaintiffs pray for relief as set forth below

## THIRD CAUSE OF ACTION
### Fraud
**(Alleged By Plaintiff Against Blast and Bosier)**

35. Plaintiffs refer to and incorporate, as though fully set forth herein, Paragraphs 1-20 and 28-34, inclusive.

36. Prior to Plaintiffs entering the Agreement, Blast and Bosier made material misrepresentations and/or false promises, failed to disclose material facts to, or concealed

**COMPLAINT - 6**

material facts from Plaintiffs. At the time, Bosier was an officer and substantial owner of Blast, exercising managerial functions, and actively participated in making misrepresentations to, or concealing facts from, Plaintiffs.

37. In or around November 30, 2020, Blast and Bosier misrepresented the following material facts to Plaintiffs:

    a. Blast owned the Property it intended to sell to Plaintiffs;

    b. The items listed in the "B&B Custom Homes Stellas Point Interior & Exterior Standard Features" were included in the price for the house;

    c. Blast would construct the property by no later than June 30, 2021; and

    d. Bosier would not make changes to the Plans after November 30, 2020.

38. Specifically, Blast and Bosier caused to be transmitted to Plaintiffs by Wilson Walters an email containing all the documents in the Agreement, except Addendum #2. To wit, attached to the email were the Contract, Addendum #1, the warranty, the Plans and the Standard Features. The Contract stated that the Property would be conveyed to Plaintiffs by Blast, with no mention of KNT Investments, LLC (the actual legal owner of the Property), and that the closing date was June 30, 2021. Further, the email stated "[Blast] sent over the inclusive feature sheet for what is included in the home beyond what is shown on the plans" (i.e., the Standard Features) and "[Bosier] won't be making any other changes to the plan at this point."

39. Throughout the discussions and after the signing of the Agreement, Bosier further represented that wood siding would be installed on the home instead of the standard stucco finish.

40. At the time they made the above misrepresentations, false promises, omissions, and/or concealments, each of Blast and Bosier knew the misrepresentations, false promises,

**COMPLAINT - 7**

omissions, and/or concealments were false. The actual owner of the Property was KNT Investments, LLC, not Blast or Bosier. Further, Blast and Bosier had no intention of constructing the house by June 30, 2021, nor including in it the "Standard Features" listed in the Agreement. Further still, Bosier intended to make further changes to the Plans like the removal of the heated bathroom flooring and the additions to the Electrical Plan – despite specifically agreeing to these items in writing and initialing these changes.

41. Blast and Bosier intended that Plaintiffs rely on the above misrepresentations, false promises, omissions, and/or concealments to induce Plaintiffs to enter the Agreement.

42. Plaintiffs reasonably relied on the misrepresentations, false promises, omissions, and/or concealments when entering the Agreement. Had Plaintiffs known the truth behind these misrepresentations, Plaintiffs would never have entered the Agreement. Plaintiffs specifically chose to contract with the Defendants based on the representations and agreement to construct the home according to the changes the parties negotiated (e.g., electrical upgrades, heated floors and wood siding). There were multiple contractors within the subject development and nearby which Plaintiffs would have selected but for the promises and representations made by Bosier.

43. Plaintiffs were damaged by the misrepresentations, false promises, omissions, and/or concealments of Blast and Bosier.

44. Plaintiffs' reliance on the misrepresentations, false promises, omissions, and/or concealments proximately caused Plaintiffs' harm.

45. In engaging in the acts as herein alleged, Blast and Bosier engaged in oppressive, fraudulent, malicious and/or outrageous conduct.

**COMPLAINT - 8**

## FOURTH CAUSE OF ACTION
## Idaho Consumer Protection Act
## (Alleged By Plaintiff Against Blast)

46. Plaintiffs refer to and incorporates, as though fully set forth herein, Paragraphs 1-20 and 28-45, inclusive.

47. In engaging in the acts as herein alleged, Blast and knew, or in the exercise of due care should have known, that it had or was:

   a. Advertising goods or services with intent not to sell them as advertised;

   b. Engaging in an act or practice that is misleading, false, or deceptive to the consumer; and/or

   c. Engaging in an unconscionable method, act or practice in the conduct of trade or commerce.

48. Specifically, in addition to the allegations set forth above, Blast attempted to cause Plaintiffs to terminate the Agreement so Blast could sell the Property to another buyer at a higher price.

49. Since the Agreement was executed, prices have risen for property and homes in the surrounding area. Meanwhile, costs for building materials have also increased, meaning Blast would realize less profit on the sale to Plaintiffs. If Plaintiffs were to terminate the Agreement, Blast could get a higher price for the Property and avoid the downside of increased materials costs in its fixed price Agreement with Plaintiffs.

50. To induce Plaintiffs to terminate the Agreement, Blast delayed work on the project, acted unreasonably in its dealings with Plaintiffs, and repeatedly went back on promises and agreements.

51. On information and belief, Blast has done the same to others in contracts with

**COMPLAINT - 9**

them for properties in the same or similar developments as the Property.

52. As a result of Blast's conduct, Plaintiffs were damaged.

**WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:**

### FIRST CAUSE OF ACTION

1. An Order directing Blast to perform the Agreement; and

2. Reasonable attorney's fees pursuant to contract.

### SECOND CAUSE OF ACTION

3. General damages in an amount to be determined at trial, and in excess of $75,000.00;

4. Consequential damages in an amount to be determined at trial;

5. Reasonable attorney's fees pursuant to contract and

6. Prejudgment interest at the legal rate according to proof, including interest accrued on damages and penalties.

### THIRD CAUSE OF ACTION

1. General damages in an amount to be determined at trial, and in excess of $75,000.00; and

2. Consequential damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

1. General damages in an amount to be determined at trial; and

2. Reasonable attorney's fees pursuant to statute.

### ON ALL CAUSES OF ACTION

1. For costs of this suit;

2. For such other and further relief as the Court deems proper.

Plaintiffs demand a Jury Trial.

DATED: May 20, 2021.                         **PERKINS COIE LLP**

By: */s/ Molly E. Mitchell*
Molly E. Mitchell
MMitchell@perkinscoie.com
1111 West Jefferson Street, Suite 500
Boise, ID  83702-5391
Telephone:  208.343.3434

*Attorneys for Plaintiffs*

**COMPLAINT - 11**