UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MYLES DAVIS, an individual, and, JANELLE DAHL, an individual, | Case No. 1:21-cv-00218-BLW |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| v. | |
| BLAST PROPERTIES, INC. dba B&B CUSTOM HOMES, an Idaho Corporation, and TYLER BOSIER, an individual, | |
| Defendants. | |

**INTRODUCTION**

Before the Court is Myles Davis' and Janelle Dahl's Motion for Leave to Amend to Add a Claim for Punitive Damages.[1] Dkt. 45. As explained below, the Court will grant the motion and certify a controlling question of law to the Idaho

---

[1] Also before the Court is Defendants' motion to strike (Dkt. 51) paragraphs 2, 3, and Exhibits X and Y, of the Declaration of Janelle Dahl (Dkt. 45-4). This motion is easily resolved because "[a] motion to strike is limited to pleadings," and declarations and exhibits are not pleadings. *Utley v. Continental Divide Outfitters*, 2009 WL 631465, at *2 (D. Idaho Mar. 10, 2009) (quoting *U.S. v. Crisp*, 190 F.R.D. 546, 550 (E.D. Cal. 1999)); Fed. R. Civ. P. 7(a). Moreover, in resolving Plaintiffs' motion to amend, the Court does not rely upon the materials objected to and therefore need not analyze their admissibility at this juncture.

**MEMORANDUM DECISION AND ORDER – 1**

Supreme Court.

## BACKGROUND[2]

This case involves a disputed real estate and construction contract. In the summer of 2020, Plaintiffs Myles Davis and Janelle Dahl began working with Defendant Tyler Bosier, the president of Defendant Blast Properties, to design and purchase a new home. *Bosier Decl.* ¶¶ 2–3, Dkt. 22-2.

The parties first identified a lot on which to build the home. *Id.* ¶ 3. Next, Davis and Dahl selected a baseline home model and the parties began discussing possible customizations. Davis and Dahl requested numerous additions, including a pool and outdoor kitchen. Additionally, Davis—an electrician by trade—requested various specific electrical upgrades. He hand-drew the proposed upgrades on his copy of the floor plan, scanned the copy, and emailed it to Bosier. *Davis Decl.* ¶¶ 2–3, Dkt. 45-3.

Once Blast's designer incorporated the requested upgrades into the floorplan, Bosier gave Davis and Dahl an updated quote. *Bosier Decl.* ¶ 6, Dkt. 22-2. It was higher than Davis and Dahl were willing to pay, so the parties began exploring ways to reduce the price by eliminating certain customizations. *Id.*, *Ex.*

---

[2] For a thorough review of the factual and procedural history of this case, see the Court's *Memorandum Decision and Order* (Dkt. 33).

*4.* From late-October to mid-November of 2020, the parties negotiated the design adjustments and price reductions.

In early November, Bosier suggested keeping the covered patio and outdoor kitchen but removing the pool and electrical upgrades. Dkt. 45-22 ¶ 12, *Ex. T*. Doing so would reduce the price to $625,000. Seeking a further reduction, Davis and Dahl opted, instead, to drop the covered patio, outdoor kitchen, and pool, but keep the electrical upgrades. Accordingly, on November 20, 2020, Bosier wrote to Blast's real estate agent, Wilson Walters, advising that the pool, outdoor kitchen, and patio extension would be removed at the buyers' request. Dkt. 45-6, *Ex. B*. "With his special electrical request," Bosier told Walters, "the final price point is $615,000. This is the house I will build for him at this price." *Id.* at 1.

Shortly thereafter, on November 30, Walters passed Bosier's offer along to Davis' and Dahl's agent, Dan Allen, stating: "[Bosier] kept the upgraded electrical" and "won't be making any other changes to the plan at this point." *Davis Decl.* ¶ 15, Dkt. 45-3. He attached the full, proposed contract to the email, "ready for them to sign, if they would like to move forward." *Id.* They executed the written contract in December 2020, including the electrical plan with Davis' hand-drawn upgrades. Dkt. 1-4 at 13, *Ex. B-1*.

Blast began constructing Davis and Dahl's home in early April 2021. *Allen*

*Decl.* at 3, Dkt. 24-2. By then, costs of lumber and other construction materials were skyrocketing due to economic disruptions arising from the COVID-19 pandemic. Concerned with the impact of rising prices on Blast's construction of the home, Bosier sent a proposed addendum to Davis and Dahl. Dkt. 45-12, *Ex. J.* The addendum included four "requests for contract modifications." *Bosier Decl.* ¶ 12, Dkt. 22-2. One proposed: the "[e]lectrical sketch from client is not a part of the building plans and/or contract. Any extras or requests from Buyer to be handled via change orders." *Id.* at 101, *Ex. 10*.

Davis and Dahl refused to sign the addendum and the parties' discussions soon came to a standstill. Bosier then advised that "if you do not wish to pay this materials increase I understand but will be forced to absorb your lumber increases and only follow our standard specs for your home and design of your home." Dkt. 45-25 at 1–2, *Ex. W.*

Davis and Dahl subsequently brought this action against Bosier and Blast claiming breach of contract, fraud, and violations of the Idaho Consumer Protection Act. *Compl.*, Dkt. 1. In January 2022, the Court granted summary judgment on the issue of breach, finding that Blast repudiated the contract as a matter of law by stating in a May 6 email that it considered the contract settled and would not alter that position. *See* Dkt. 33.

Davis and Dahl now ask the Court for leave to amend their complaint and add a claim for punitive damages against Defendants. Dkt. 45-1. They argue that punitive damages are appropriate because Defendants committed fraud by promising to complete the upgraded electrical work without ever intending to do so.

## LEGAL STANDARDS

### 1.    Adding a Claim for Punitive Damages

In federal cases based on diversity jurisdiction, Idaho Code section 6-1604 governs claims for punitive damages. *Windsor v. Guarantee Tr. Life Ins. Co.*, 684 F.Supp. 630, 633 (D. Idaho 1988).

### A.    The Standard: Idaho Code Section 6-1604

Idaho Code section 6-1604 imposes two important limitations on litigants seeking punitive damages: one at the pleading stage and another at the trial stage.

At the pleading stage, the statute prohibits a plaintiff from claiming punitive damages in her initial complaint. Instead, upon a pretrial motion and hearing, the plaintiff must seek to "amend the pleadings to include a prayer for relief seeking punitive damages." I.C. § 6-1604(2). A court, in turn, should permit such amendment only if, "after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of

proving facts at trial sufficient to support an award of punitive damages." I.C. § 6-1604(2).

The next limitation imposed by section 6-1604 applies at the trial stage. To succeed on a claim for punitive damages, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1). That means showing "the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.*, 146 Idaho 118, 123 (2008) (citing *Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 503 (2004)). A bad act is an "extreme deviation from reasonable standards of conduct." *Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 145 Idaho 241, 250 (2008). A bad state of mind is "an extremely harmful state of mind, whether that be termed malice, oppression, fraud or gross negligence; malice, oppression, wantonness; or simply deliberate or willful." *Myers*, 140 Idaho at 503.

### B.    Interpreting Section 6-1604(2)

There are two prevailing approaches to interpreting the pleading-stage standard set forth in section 6-1604(2): the Rule 50 approach and the evidence-balancing approach. Under the first approach, in determining whether to permit a claim for punitive damages, a court views all evidence in the movant's favor

without assessing credibility or resolving factual disputes and asks whether a reasonable jury could award punitive damages. This approach finds support in the statutory language that the trial court is to determine whether the plaintiff can present evidence "at trial sufficient to support an award of punitive damages."

Under the second approach, in contrast, a court must hold an evidentiary hearing and weigh conflicting evidence, make credibility determinations, and decide how likely the movant is to ultimately obtain punitive damages. This approach finds support in the statutory language that the trial court is to determine the sufficiency of the plaintiff's evidence "after weighing the evidence presented."

As noted, there is some statutory support for both approaches. However, the Court finds the first approach to be more faithful to the statutory text, capturing the most reasonable meaning of the statute's instruction to "weigh[] the evidence presented" and determine whether it is "sufficient to support an award of punitive damages."

### (1)   The Rule 50 Approach

Courts adopting the Rule 50 approach equate the pleading-stage standard of section 6-1604(2) to the inverse of Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law. Under Rule 50, courts view all evidence in the light most favorable to the non-movant and simply ask whether a reasonable jury

could find in the non-movant's favor. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Similarly, but in the inverse, under section 6-1604(2), courts view all evidence in the light most favorable to the movant and give the movant the benefit of all legitimate inferences. In doing so, courts do not assess credibility or "resolve conflicts in testimony or disputes of fact," and thus need not hold full-scale evidentiary hearings. *Sherwood v. BNSF Railway Company*, No. 2:16-CV-00008-EJL-REB, 2018 WL 8619794, at *4 (D. Idaho Sept. 28, 2018). Rather, so long as a movant shows that a reasonable jury could find clear and convincing evidence supporting punitive damages, the court allows the movant to seek punitive damages.

This Court regularly adopts the Rule 50 approach.[3] In doing so, the Court has repeatedly affirmed that section 6-1604(2) is satisfied whenever a movant

---

[3] *See, e.g.*, *Morningstar Holding Corp. v. G2, LLC*, No. CV–10–439–BLW, 2012 WL 287517, at *13–14 (D. Idaho Jan. 31, 2012); *Bryant v. Colonial Surety Company*, No. 1:13-cv-298-BLW, 2016 WL 707339, at *3 (D. Idaho Feb. 22, 2016); *Estate of Kane v. Epley's Inc.*, No.: 3:15-cv-00105-EJL-REB, 2017 WL 1158242, at *4 (D. Idaho Mar. 28, 2017); *Murray v. City of Bonners Ferry*, No.: 2:15-cv-00081-REB, 2017 WL 4318738, at *2 (D. Idaho Sept. 28, 2017); *Neault v. Epley's, Inc.*, No.: 3:16-CV-00244-EJL-REB, 2018 WL 443441, at *4–5 (D. Idaho Jan. 16, 2018); *Cusack v. Bendpak, Inc.*, No. 4:17-cv-00003-DCN, 2018 WL 1768030, at *4-5 (D. Idaho Apr. 12, 2018); *Sherwood*, 2018 WL 8619794, at *4; *Hathaway v. Idaho Pacific Corp.*, No. 4:15-cv-00086-DCN, 2019 WL 4891044, at *5–6 (D. Idaho Oct. 3, 2019); *Ashby v. Mortimer*, No. 4:18-cv-00143-DCN, 2020 WL 572718, at *15–18 (D. Idaho Feb. 5, 2020).

presents enough evidence that a reasonable jury could award punitive damages. [4] This seemingly permissive standard is tempered, however, by the heightened trial-stage standard requiring "clear and convincing evidence" of a bad act and bad state of mind before awarding punitive damages. Thus, "[p]utting these standards together," a movant must show that he is reasonably likely to prove facts sufficient for a reasonable jury to find clear and convincing evidence that the non-movant committed a bad act with a bad state of mind. *Sherwood*, 2018 WL 8619794, at *2.

Although the Idaho Supreme Court has not expressly adopted the Rule 50 approach, it has occasionally described section 6-1604(2) in accordance with that approach. In *Hall v. Farmers Alliance Mutual Insurance Co.*, for example, the court asked whether a "reasonable likelihood exist[s] *that the evidence could support* a punitive damages award," or "that an award of punitive damages *could be supported*." 145 Idaho 313, 319–20 (2008) (emphasis added). Ultimately, it affirmed the district court because "the [plaintiff] pointed to several instances that

---

[4] Admittedly, this Court has not been perfectly consistent in applying the Rule 50 approach. In some cases, the Court has denied motions to add punitive claims where "the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims." *Hansen-Rice, Inc. v. Celotex Corp.*, No. CV-04-101-S-BLW, slip op. at 2 (D. Idaho June 22, 2006); *see also Hardenbrook v. United Parcel Service, Co.*, No. CV 07–509–S–EJL–CWD, 2009 WL 3530735 (D. Idaho Oct. 26, 2009); *Roost Project v. Anderson Construction Company*, 437 F.Supp.3d 808, 829 (D. Idaho 2020). That formulation is more in line with the evidence-balancing approach, discussed below. This inconsistency is one reason why this Court now seeks to clarify the proper approach.

*could support the conclusion* that [the defendants] possessed an 'evil mind.'" *Id.* at 320 (emphasis added). Similarly, in *Gunter v. Murphy's Lounge, LLC*, the court agreed that the plaintiff could seek punitive damages because "there was sufficient evidence a jury could find that Defendants acted in a manner that was malicious or outrageous." 141 Idaho 16, 29–30 (2005). In both cases, the Idaho Supreme Court interpreted section 6-1604(2) in line with the Rule 50 approach, focusing on whether a reasonable jury could award punitive damages based on the movant's evidence, not on whether the court itself would be inclined to do so.

### (2)    The Evidence-Balancing Approach

Courts adopting the evidence-balancing approach, in contrast, view section 6-1604(2) as requiring courts to balance the strength of conflicting evidence, make credibility determinations, and decide how likely the factfinder is to actually award punitive damages. [5] Put another way, under this approach, a movant can only add a claim for punitive damages when the court finds that the movant is "reasonably likely" to actually obtain a punitive damages award.

The Idaho Supreme Court has not expressly adopted the evidence-balancing

---

[5] A court applying the evidence-balancing approach would seemingly have to hold a full-scale evidentiary hearing whenever a party seeks to a add a claim for punitive damages because, to make credibility determinations, the court must observe the evidence first-hand.

approach. It has, however, seemingly endorsed that approach on more than one occasion when describing the pleading-stage standard of section 6-1604(2). In *Hall*, for example, the court stated that "a 'reasonable likelihood' must exist that the defendant performed a bad act with a bad state of mind." *Hall*, 145 Idaho at 319. Similarly, in *Parks v. Safeco Insurance Co. of Illinois*, the court affirmed a district court's refusal to permit a claim for punitive damages because the plaintiff "could not demonstrate a reasonable likelihood that [the defendant] committed a bad act with a bad state of mind." 160 Idaho 556, 563 (2016). These formulations envision the court determining how likely it is—in the *court's* opinion—that the non-movant actually performed a bad act with a bad state of mind.

In the same vein, several lower state courts have rejected the Rule 50 approach, declaring that it does not account for the statute's instruction to weigh the evidence presented. *Wadsworth Reese v. Siddoway & Co.*, No. CV-OC-2015-21225, 2017 WL 11446235, at *2 n.3 (Fourth District of Idaho May 18, 2017). [6] In applying the evidence-balancing approach, however, these courts have struggled to

---

[6] *See also Mosell Equities v. Berryhill & Co. Inc.*, No. CVOC0909974, 2010 WL 10876656 (Fourth District of Idaho Apr. 30, 2010); *Balek v. Short*, No. CV 2008 4562, 2009 WL 2929321 (First District of Idaho Sept. 11, 2009); *Hartranft v. Ronk*, No. CV-2006-1029, 2006 WL 6108421 (First District of Idaho Dec. 11, 2006); *Ray v. Hartford*, No. CVPI0400163D, 2006 WL 6343703 (Fourth District of Idaho May 18, 2006).

determine what constitutes a "reasonable likelihood" that a jury will award punitive damages. Noting that "Idaho case law doesn't seem to explore the meaning of the phrase 'reasonable likelihood,'" the Honorable Jason Scott of the Fourth Judicial District suggested that it means "a realistic chance." *Id.* What constitutes a realistic chance, however, remains unclear.

### (3)    The Proper Approach

Both approaches outlined above find support in a different part of the statute. Section 6-1604(2) identifies both the *process* courts must use and the underlying *determination* courts must make when analyzing requests to seek punitive damages. As for process, courts must hold hearings and "weigh[] the evidence presented." The evidence-balancing approach focuses on this portion of the text, using it as a lens through which to view the rest of section 6-1604(2). The underlying determination a court must make under section 6-1604(2) is whether a movant is reasonably likely to prove facts at trial sufficient to support an award of punitive damages. The Rule 50 approach views this standard as the central feature of the statute and therefore views the prescribed process in a way that enlivens rather than displaces the standard. Put another way, the Rule 50 approach uses the underlying standard as a lens through which to view the prescribed process, not the other way around.

The Rule 50 approach is better for at least two reasons. First, it comports with the plain meaning of the statute. Idaho Code section 6-1604(2) requires a movant to show a "reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C. § 6-1604(2). But they need not show a reasonable likelihood of actually obtaining punitive damages at trial.[7] Rather, the movant must only establish a reasonable likelihood of proving facts "*sufficient to support* an award of punitive damages." *Id.* (emphasis added). What facts are "sufficient to support" such an award? Facts that a reasonable jury could find constitute "clear and convincing evidence" of "oppressive, fraudulent, malicious or outrageous conduct." *Id.* Thus, under a plain reading of the statute, a movant must show that he can present evidence upon which a jury may award punitive damages. He need not, however, show how likely a jury would be to actually grant such an award.[8]

---

[7] Some courts have missed this important point. In *Mosell Equities v. Berryhill & Co. Inc.*, for example, a state district court denied a motion to add a claim for punitive damages because "the Court does not find that there is a reasonable likelihood that a jury *would find* by clear and convincing evidence oppressive, fraudulent, malicious or outrageous conduct." 2010 WL 10876656, at *11 (emphasis added). By adding the words "would find" to the statute, the court erroneously turned its focus from what the movant's evidence was "sufficient to support," to what a jury would probably conclude. That is not the analysis set out in the statute.

[8] *See, e.g.*, *Hathaway v. Idaho Pacific Corp.*, No. 4:15-cv-00086-DCN, 2019 WL 4891044, at *5–6 (D. Idaho Oct. 3, 2019) ("A jury may reasonably believe [the defendant's] (Continued)

Second, the Rule 50 approach gives effect to the only reasonable meaning of section 6-1604(2)'s instruction that courts "weigh[] the evidence presented." Some courts and commentators have argued that phrase distinguishes the Rule 50 standard, which does not permit courts to weigh evidence. *See e.g.*, *Wadsworth Reese*, 2017 WL 11446235, at *2 n.3; Richard H. Seamon, *An Erie Obstacle to State Tort Reform*, 43 IDAHO L. REV. 37, 113 n.340 (2006). If that were true, though, full-scale evidentiary hearings would be required every time a plaintiff wished to seek punitive damages at trial. To the contrary, when viewed in the context of section 6-1604(2), "weighing the evidence presented" requires something less than a full evidentiary hearing.

Courts must weigh evidence, to an extent, to determine whether a movant is reasonably likely to prove sufficient facts at trial for a jury to award punitive damages. If a movant reports an alleged bad act by the non-movant, for example, the court must determine whether the movant has presented any evidence that the

---

explanation for everything, but they may also believe [the plaintiff's]. At this juncture, it is not necessary to determine which party's interpretation is the correct one. Instead, the Court must determine if there is a "reasonable likelihood" that [the plaintiff] could prove facts at trial to support his claim for punitive damages. Idaho Code § 6–1604(2). Having determined [the defendant's] conduct could be described as malicious, fraudulent, oppressive, or outrageous, and that [the plaintiff] has established a reasonable likelihood that he could prove such conduct at trial, the Court GRANTS [the plaintiff's] Motion.").

act occurred. If the movant has not, he is not reasonably likely to prove facts upon which a jury could award punitive damages. This does not mean, however, that the court must assess credibility and balance the relative strength of the parties' conflicting evidence. Doing so would require holding a full-blown evidentiary hearing—a sort of 'trial before the trial'—every time a litigant wished to seek punitive damages. That cannot possibly be what section 6-1604(2) requires. Instead, the more reasonable understanding is that courts must weigh the evidence to the extent necessary to determine if a reasonable jury could award punitive damages.

Opponents of the Rule 50 approach have challenged that it "eviscerates the clear and convincing evidence standard" and gives rise to rubber-stamp approval of motions to add punitive damages claims. J. Walter Sinclair, *Punitive Damages and the Idaho Courts' 'Gatekeeper' Responsibilities*, THE ADVOCATE, January 2014, at 2. But this Court's prior decisions disprove that prediction.

In *Murray v. City of Bonners Ferry*, for example, this Court applied the Rule 50 approach but denied the plaintiff's motion to add a claim for punitive damages. No.: 2:15-cv-00081-REB, 2017 WL 4318738, at *18 (D. Idaho Sept. 28, 2017). Despite the plaintiff's claim that the defendant committed certain bad acts, the Court held there was not enough evidence for reasonable jury to find an "extremely

harmful state of mind" by clear and convincing evidence. *Id.* Similarly, in *Sherwood v. BNSF Railway Co.*, this Court carefully reviewed the plaintiff's proffered evidence but concluded it was insufficient for a jury to find that the defendant acted with a bad state of mind. 2018 WL 8619794, at *5. In both cases, this Court used the Rule 50 approach and weighed the evidence as required by section 6-1604(2) but denied motions to add claims for punitive damages.

Ultimately, the Rule 50 approach is faithful to the statutory text and captures the most reasonable meaning of the instruction that courts weigh the evidence presented.

### C.    Certification to the Idaho Supreme Court

Idaho Appellate Rule 12.3(a) provides that a federal district court may certify a question of law "on the court's own motion" if two conditions are met. First, "[t]he question of law certified is a controlling question of law in the pending action in the United States court as to which there is no controlling precedent in the decisions of the Idaho Supreme Court." I.A.R. 12.3(a)(1). And second, "[a]n immediate determination of the Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States court." I.A.R. 12.3(a)(2).

Both requirements for certification are satisfied here. First, the meaning of

section 6-1604(2) is controlling and there is no clear, controlling state precedent. As discussed below, viewing the evidence in the light most favorable to Davis and Dahl and asking whether a reasonable jury could award punitive damages, the Court grants their motion. Conversely, if the Court were to conduct an evidentiary hearing, assess the relative credibility of the parties' evidence and arguments, and determine whether it believes the jury will probably award punitive damages, the opposite result would be likely. Put another way, although a reasonable jury could find fraud by clear and convincing evidence, the Court is not confident that the jury in this case will do so.[9] The proper approach to interpreting section 6-1604(2) is therefore controlling in this case. Moreover, there is no clear controlling precedent from the Idaho Supreme Court. As discussed, that court has described the standard in various ways, favoring the Rule 50 approach sometimes and the evidence-balancing approach other times. We are therefore left not only with an absence of controlling precedent, but with two distinct approaches, both arguably supported by state precedent. Resolving this issue is essential to assuring the uniform application of state law in the future. *Lehman Brothers v. Schein*, 416 U.S. 386,

---

[9] At this juncture, the Court does not definitively resolve whether it would grant or deny Davis's and Dahl's motion if it applied the evidence-balancing approach. If necessary, the Court will take up that question upon a motion to reconsider after the Idaho Supreme Court answers the certified question.

391 (1974).

Second, an immediate determination of the meaning of section 6-1604(2) would materially advance the orderly resolution of this case. Trial is the next stop on this litigation's track. But before trial, the Court must determine whether to permit Plaintiffs to seek punitive damages. That determination, in turn, depends upon the standard applied to Plaintiffs' pending motion. Clarifying the proper standard is essential to move this litigation forward.

This Court will therefore certify the following question to the Idaho Supreme Court:

> Is the Rule 50 approach, as described in this decision, the proper means for the trial court to comply with its obligation under Idaho Code § 6-1604(2), to determine, "after weighing the evidence presented," whether the plaintiff has established "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages?"

For now, the Court will proceed by analyzing Davis' and Dahl's motion under the Rule 50 approach, which this Court believes is proper. However, if it becomes necessary after the Idaho Supreme Court has answered the certified question, this Court will entertain motions to reconsider this decision. Further, pending resolution of the certified question, the Court will refrain from setting a trial date.

### D.    Punitive Damages in Fraud Cases

"It is well established in this state that punitive damages may be awarded when the defendant has committed fraud." *Umphrey v. Sprinkel*, 106 Idaho 700, 710 (1983); *see also Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 148 (2021). Thus, a plaintiff who is reasonably likely to prove facts sufficient for a jury to find fraud by clear and convincing evidence may seek punitive damages. He need not make any additional showing that the defendant's conduct involved a bad act and bad state of mind—both components are subsumed in the elements of fraud.[10]

### E. Elements of Fraud

To succeed on a fraud claim in Idaho, a plaintiff must show: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity [or ignorance of its truth]; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." *Frontier Development Group, LLC v. Caravella*, 157 Idaho 589, 594 (2014). Moreover, as here, when seeking punitive damages for fraud, the plaintiff must establish each of those

---

[10] Defendants argue that fraud, alone, cannot support a claim for punitive damages. *Def.'s Resp.* at 5–6, Dkt. 50. They believe fraud is only one possible bad state of mind, and that Plaintiffs must also point to some separate bad act. But Defendants conflate the term "fraud" as used to describe a state of mind and as used to describe a civil cause of action. Here, Davis and Dahl claim fraud as a cause of action—not merely a bad mental state—which encompasses both a bad act and bad state of mind.

elements by clear and convincing evidence. I.C. § 6-1604(1).

## ANALYSIS

To resolve Davis' and Dahl's motion, the Court must focus on two key questions: (1) are Defendants shielded from liability for punitive damages because Mr. Walters, a third party, sent the November 30 email; and (2) are Davis and Dahl reasonably likely to prove facts sufficient for the jury to find clear and convincing evidence that Defendants knew, as of November 30, that Walters' email contained a false statement?

### 1.   Defendants are not shielded from liability simply because a third-party made the allegedly fraudulent statement.

Davis and Dahl claim that Defendants made a fraudulent statement through their agent, Mr. Walters, in the November 30 email. Defendants first respond that they are not responsible for Walters' statement because he is a third party and "Blast didn't necessarily agree that [the email] accurately conveyed what Blast was saying at that time." *Def.'s Resp.* at 3, Dkt. 45-1. But Defendants are not shielded from liability simply because Walters sent the email.

In Idaho, "a principal is liable for punitive damages based upon the acts of his agents only in which the principal participated or which he authorized or ratified." *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 905 (1969). If the principal is a corporation, punitive damages may be appropriate when "an officer or director

participated in, or ratified, the conduct underlying the punitive damage award."
*Griff, Inc. v. Curry Bean Co., Inc.*, 138 Idaho 315, 321 (2002).

Bosier and Blast were both principals of Walters and therefore are not shielded from potential liability for punitive damages simply because Walters sent the allegedly fraudulent email. First, in sending that email, Walters was acting as Bosier's agent and serving as a conduit between the buyers and the sellers. *Bosier Dep.* at 55:7-10, Dkt 46-2. Indeed, the content of Walters' November 30 email does not materially differ from the content of Bosier's email to Walters. *Compare* Dkt. 45-6 *and* Dkt. 46-4. Bosier told Walters what contract terms were acceptable to Blast, and Walters informed Plaintiffs of those terms. Bosier therefore clearly authorized Walters' statement. And second, in communicating the offer to Walters, Bosier—a director and officer of the corporation—was acting as Blast's agent. *Bosier Decl.* ¶ 2, Dkt. 22-2. Blast is therefore also subject to any liability arising from the statement.

**2.      Davis and Dahl are reasonably likely to prove facts supporting an award of punitive damages.**

Applying the Rule 50 approach to interpreting section 6-1604(2), the Court concludes that Plaintiffs are reasonably likely to prove facts at trial sufficient to support an award of punitive damages, so as to avoid a Rule 50 motion at the close of the case.

Not every element of Davis' and Dahl's fraud claim is disputed. Instead, the key questions are (1) whether the November 30 email contained a false statement and, if it did, (2) whether Defendants knew it did. According to Davis and Dahl, the November 30 email falsely represented that Defendants intended to complete the hand-drawn electrical work. Defendants respond that, at the time, they did intend to complete that electrical work "to the extent [they] understood the scope of work." *Def.'s Resp.* at 3, Dkt. 50.

Davis and Dahl argue that at least three facts suggest that the November 30 email was false and that Defendants knew it was false. First is Bosier's response to one of Davis' and Dahl's interrogatories. Interrogatory 26 asked Defendants to "IDENTIFY all EVIDENCE that shows YOU did or intended to install HANDDRAWN ELECTRICALS in the RESIDENCE." Bosier responded:

> Objection, Defendants did not intend to install hand-drawn electricals in the residence. Some of the hand-drawn electricals were illegible. and others did not make sense given the other changes to the plans made by Plaintiffs in order to reduce the price of the home.
> …

Dkt. 45-8, *Ex. D*. Conceding that their response is no "model of clarity," Defendants explain that the interrogatory was unclear as to the timing of intent. They point out that later, in negotiating Defendants' proposed addenda, the parties discussed the possibility of Davis completing the electrical work himself. Thus,

**MEMORANDUM DECISION AND ORDER - 22**

Defendants argue that their interrogatory response does not accurately reflect their intentions as of November 30.

Ultimately, the jury's conclusion on this point will depend upon whether they believe Bosier's alternative explanation for the interrogatory response. In other words, the jury will have to assess Bosier's credibility. But at this point, the Court need not do so. Instead, weighing the evidence, the Court finds that a reasonable jury could infer falsity and knowledge of falsity from Defendants' admission that they "did not intend to install hand-drawn electricals in the residence." *Id.* During initial negotiations, Defendants repeatedly treated the hand-drawn electricals as a valuable component of the deal. Dkt. 45-6 at 1, *Ex. B*. Now, they suggest the hand-drawn electricals were not really part of the equation because they were illegible and conflicted with the other plans. This apparent inconsistency could suggest that Defendants used the hand-drawn electricals as a bargaining chip to reduce costs, knowing that once the contract was signed, the electricals would be discarded.

Next, Davis and Dahl point out that Defendants never solicited bids for the custom electrical work, which "is inconsistent with an honest, reasonable belief that the custom electrical upgrades would be done as part of the contract." *Memo. in. Supp.* at 8, Dkt. 45-1. At the hearing on this motion, Plaintiffs' counsel also

stated that the one electrical bid Defendants did obtain did not include the hand-drawn electrical work. Defendants respond that they worked up a "more robust" budget in light of the customizations and "believe[d] that we had the funds within the allowances to achieve all of these items." *Bosier Dep.* at 84:16-25, Dkt. 46-2. But they have not explained why they opted for this shoot-from-the-hip approach instead of seeking a bid for the custom electricals. This omission, though not sufficient on its own, could contribute to a jury finding that Defendants never intended to perform the custom electrical work.

Finally, Davis and Dahl note that Defendants refused to complete the hand-drawn electricals only four months after sending the November 30 email. *Memo. in Supp.* at 6, Dkt. 45-1. That short period of time, they argue, suggests that Defendants never intended to complete the work in the first place. Again, defendants offer an alternative explanation, tying their eventual refusal to the dramatic increases in building material costs arising well after the November 30 email was sent. *Bosier Decl.* ¶ 12, Dkt. 22-2. Here again, the jury's conclusion will depend upon whose narrative it believes. The Court does find, however, that a jury could reasonably infer that the November 30 email was false based on Defendants' refusal to complete the custom electricals within a very short time afterward. Again, while this alone would not support a finding of fraud by clear and

**MEMORANDUM DECISION AND ORDER - 24**

convincing evidence, it could contribute to such a finding.

Ultimately, after weighing the evidence, the Court finds that Davis and Dahl are reasonably likely to prove facts—Bosier's interrogatory response, failure to solicit bids, and prompt refusal to perform the work—sufficient to support a jury award of punitive damages. Taken together, these facts arguably show that Defendants' November 30 email falsely stated that they would build a certain home—including the electrical upgrades—for a certain price. Davis and Dahl will therefore be permitted to add a claim for punitive damages.

## ORDER

**IT IS ORDERED that:**

1.  Plaintiffs' Motion for Leave to Amend to Add a Claim for Punitive Damages (Dkt. 45) is **GRANTED**. However, if necessary based upon the Idaho Supreme Court's answer to the certified question, this Court will entertain a motion to reconsider this decision. The Court will not formally stay this litigation but will refrain from scheduling trial until the certified question has been resolved.

2.  The following question is certified to the Idaho Supreme Court:

    > Is the Rule 50 approach, as described in this decision, the proper means for the trial court to comply with its obligation under Idaho Code § 6-1604(2), to determine, "after weighing the evidence presented," whether the plaintiff has established "a reasonable

likelihood of proving facts at trial sufficient to support an award of punitive damages?"

3.    Pursuant to Idaho Appellate Rule 12.3(b), the Clerk of the Court shall

file a certified copy of this Order with the Idaho Supreme Court.

4.    Defendants' Motion to Strike (Dkt. 51) is **DENIED**.

DATED: February 3, 2023

B. Lynn Winmill
U.S. District Court Judge

**Memorandum Decision and Order - 26**