UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MYLES DAVIS, an individual, and, JANELLE DAHL, an individual, | Case No. 1:21-cv-00218-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| BLAST PROPERTIES, INC. dba B&B CUSTOM HOMES, an Idaho Corporation, and TYLER BOSIER, an individual, | |
| Defendants. | |

## INTRODUCTION

Before the Court are the parties' cross Motions in Limine (Dkts. 63 & 64). For the reasons explained below, the Court will grant both motions in part and deny both in part.

## BACKGROUND[1]

This case involves a dispute over a real estate and construction contract. Defendants Blast Properties and Tyler Bosier (together "Blast") agreed to build

---

[1] A thorough review of the factual history of this case is set forth in the Court's prior Memorandum Decision and Order (Dkt. 33) granting partial summary judgment.

**MEMORANDUM DECISION AND ORDER - 1**

and sell a house to Plaintiffs Myles Davis and Janelle Dahl. The parties'
relationship eventually broke down and Blast told Davis and Dahl that it would not
perform the contract. Davis and Dahl subsequently purchased another home for
more money and at a higher mortgage rate.

Davis and Dahl filed this lawsuit against Blast for specific performance,
breach of contract, fraud, and violations of the Idaho Consumer Protection Act.
*Am. Compl.* ¶¶ 25–55, Dkt. 69. Shortly thereafter, Davis and Dahl moved for
partial summary judgment on the issues of specific performance, breach by
repudiation, and Defendants' sixth affirmative defense. The Court denied summary
judgment on specific performance but granted the motion as to breach and
Defendants' sixth affirmative defense. Dkt. 33.

What remains are Davis' and Dahl's claims for specific performance, fraud,
and violation of the Idaho Consumer Protection Act, as well as the issue damages
for Blast's breach of contract. Now, as the case heads toward trial, the parties ask
the Court to determine the proper measure of damages and, by extension, what
evidence of damages will be admissible.

## LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance
testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108,

1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## ANALYSIS

### 1.    Specific Performance

Davis and Dahl first argue that specific performance is the appropriate remedy where, as here, a seller breaches a land-sale contract. In its prior Memorandum Decision and Order granting partial summary judgment, the Court declined to resolve the plaintiffs' claim for specific performance without a fully developed record. Dkt. 33, at 36–38. So too here the Court will not delve into that fact-intensive analysis without the benefit of a fully developed record. The question of specific performance will be taken up at trial.

### 2.    Measure of Damages for a Seller's Breach of Contract

The main question before the Court is what measure of damages governs in Idaho when a seller breaches a contract for the sale of land and construction of

improvements thereon.

Blast contends that a seller is only liable for the difference between the contract price and the market value of the property at the time of the seller's breach.[2] But according to Davis and Dahl, that measure only applies when a *buyer* breaches. When a *seller* breaches, in contrast, the buyer is entitled to the benefit of the bargain, calculated as: (1) the difference between the contract price and the cost of a replacement property; plus (2) the rental value of the subject property between the original closing date and the buyer's purchase of a replacement property; plus (3) incidental and consequential damages; minus (4) any avoidable losses.

After carefully reviewing the briefing, the Court concludes that the proper measure of damages falls in between these two poles. That is, when a seller breaches a land-sale contract and specific performance is not awarded, the buyer is entitled to: (1) the difference between the contract price and the market value of the contracted-for property at the time for performance; plus (2) incidental and

---

[2] Throughout its initial brief, Blast argues that the market value must be measured "at the time of the breach." *See Def.'s Memo. in Supp.* at 2–4, Dkt. 64-1. But in its rebuttal brief, Blast refers, instead, to the "market value of the land at the time for performance." *Def.'s Rebuttal* at 3, Dkt. 66. In cases like this involving a breach by repudiation prior to the time for performance, these two valuations may produce different results. Because Blast focuses extensively on the time of the *breach* in its initial brief and makes only a passing reference to the time for *performance* in its rebuttal, the Court views Blast as primarily advocating for the first.

consequential damages, except for any avoidable losses.

### A.    Expectation Damages

At the outset, the parties agree that the proper measure of damages must satisfy the non-breaching buyers' expectation interests. In other words, the buyers are entitled to recover the benefit of their bargain and be put in a position no better and no worse than they would have been in if the contract had not been breached. *See King v. Beatrice Foods Co.*, 89 Idaho 52, 58–59 (1965).

From there, the parties disagree on two key points. First, they disagree on what the contract price should be compared with in calculating expectation damages. According to Blast, a non-breaching buyer's expectation interest is in the difference between the contract price and the market value of the property at the time of the breach. Davis and Dahl argue, instead, that the contract price must be compared with the price of the replacement property that the buyer purchased due to the seller's breach.

Second, the parties disagree on whether a non-breaching buyer is entitled to damages for the lost use of the subject property, as reflected in its fair rental value. Davis and Dahl think so; Blast thinks not.

### (1)    Price Difference

The Idaho Supreme Court has clearly established the proper measure of

expectation damages when buyers breach land-sale contracts. In such cases, non-breaching sellers are entitled to the difference between the contract price and the market value of the property at the time of the breach. *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 261 (1993). That measure of damages puts the seller in the position he would have been in absent the breach.

Idaho courts have not, however, clearly set forth the proper measure of damages when sellers breach land-sale contracts.[3] The most instructive case is a recent bankruptcy case decided by the United States Bankruptcy Court for the District of Idaho and affirmed by this Court. *In re: Best View Construction & Development, LLC, Debtor* No. BR 20-00674-JMM, 2021 WL 3745423 (Bankr. D. Idaho Aug. 24, 2021), *aff'd by* Case No. 1:21-cv-00413-MCE, 2023 WL 1389285 (D. Idaho Jan. 30, 2023).

In *Best View*, unsecured creditors brought claims against a bankruptcy debtor for breaching several land-sale contracts. *Id.* at *1–2. The court began by acknowledging that "[a] long line of case law holds that" the proper measure of

_____

[3] Blast disagrees, citing several Idaho Supreme Court cases that purportedly establish a "long-standing principle" that the proper measure of damages is "the difference between the contract price and the market value of the premises at the time of the breach." *Def.'s Memo in Supp.* at 3, Dkt. 64-1 (quoting *Smith v. King,* 100 Idaho 331, 335–35 (1979)). As Davis and Dahl demonstrate, however, for over one hundred years, Idaho courts have applied that measure of damages exclusively in buyer-breach cases.

damages for a buyer's breach of a land-sale contract is "the difference between the contract price and the market value of the premises at the time of the breach." *Id.* at *11. And that measure "makes sense" when a buyer breaches, the court explained, because "the seller retains the property to market to another buyer." *Id.* But that measure "does not provide the same understandable result" when a *seller* breaches a land-sale contract. *Id.* Rather, in such cases, "the market value of the property at time of breach is of little consequence, since that particular property is no longer in play." *Id.* Ultimately, applying the principles set forth in Restatement (Second) of Contracts § 347, the court held that the proper measure of damages for a seller's breach is the difference between the contract price and the market value of the "finished [property] contracted for." *Id.* at *13.

Both parties here believe *Best View* supports their own position; and both are partially correct. On one hand, *Best View* favors Davis and Dahl by explaining why the traditional measure of damages for a buyer's breach—taking the as-is value of the property at the time of the breach—should not apply when a seller breaches. Conversely, however, *Best View* supports Blast's position that the contract price should be compared with the market value of the same property rather than of some future replacement property that the buyer purchases. So where does that leave us?

When a seller breaches a land-sale and construction contract, the buyer is entitled to expectation damages measured by the difference between the contract price and the market value of the contracted-for property at the time for performance, i.e., the closing date. This places the non-breaching buyer in the same position he or she would have been in if the contract had been performed. It also comports with the principles set forth in Section 347 of the Restatement (Second) of Contracts, which provides that an injured party's expectation interest is measured by "the loss in the value to him of the other party's performance caused by its failure or deficiency." Restatement (Second) of Contracts § 347 (1981).[4] To determine what a buyer has lost because of a seller's breach, the value of performance must be measured as of the time for performance—no earlier, no later.

This approach finds support in Dobbs' treatise on remedies, cited by both parties and relied upon by the Idaho Supreme Court in *Lipsky*. Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 12.2(2) (3d ed. 2018); *Lipsky*, 123 Idaho at 261. Dobbs' description of the market measure of

---

[4] As this Court explained in *Best View Constr. & Dev., LLC v. Leibow*, the measure of damages set forth in § 347 of the Restatement (Second) of Contracts is good law in Idaho. 2023 WL 1389285, at *4–5.

expectation damages is precisely on-point:

> If a seller commits a total breach, the buyer would recover the market value of the property contracted for, less the contract price. For example, if the seller contracts to sell land for $10,000, but when performance is due the land is worth $15,000, the buyer would be entitled to recover $5,000 under the market-contract differential measure. The buyer will be able to show damages under this measure whenever he can show a contract price less than market value at the relevant time and place. The relevant time is almost always the date when performance was due, even in cases of anticipatory repudiation.

*Id.*

An illustration might be helpful. Imagine that on October 1, A agrees to sell a house to B for $500,000, with closing set for June 1. In January, rapid population growth in the state causes real estate prices to skyrocket. On March 1, as market prices continue to climb, A repudiates the contract by informing B that he will not sell the house to her. At that time, the market value of the house is $600,000. But prices continue to rise, and by the original closing date of June 1, the house is worth $650,000. Eventually, on September 1, B purchases a comparable replacement home for $700,000.

At the time B entered the contract in October, she expected to obtain title to the house on June 1 in exchange for $500,000. And in retrospect, we know that if the contract had actually been performed, she would have benefited from $150,000 of market appreciation. All told, then, B would have received $650,000 worth of

value on June 1 in exchange for $500,000. The value of performance to B is

therefore $150,000.

Under Blast's proposed measure of damages, B would only be entitled to the

difference between the contract price ($500,000) and the market value at the time

of the breach by repudiation ($600,000), totaling $100,000. But that damage award

would leave B in a worse position (by $50,000) than if the contract had been

performed. For this reason, Blast's proposed measure of damages is inadequate.[5]

Conversely, under Davis' and Dahl's proposed measure of damages, B

would recover the difference between the contract price ($500,000) and the price

of her replacement home ($700,000), totaling $200,000. But that would leave her

in a better position (by $50,000) than she would have been in if the contract had

been performed. Moreover, it would require undertaking the nebulous task of

reconciling the relative values of two separate, unique properties.

The better option is to compare the contract price ($500,000) with the

market value of the contracted-for home as of the closing date ($650,000). Doing

---

[5] In many cases, the breach will occur at the same time as performance is due. In such cases, Blast's proposed measure of damages would produce the correct result. However, as this hypothetical illustrates, in cases like this one involving breaches by repudiation prior to the time for performance, it is important to distinguish between the time of breach and the time for performance.

**MEMORANDUM DECISION AND ORDER - 10**

so places B in precisely the same position she would have been in if A had not

breached the contract and avoids the difficulty inherent in attempting to reconcile

property values.

In sum, when a seller breaches a land-sale and construction contract, the

non-breaching buyer is entitled to the difference between the contract price and the

market value of the contracted-for property as of the time for performance, i.e., the

closing date.

### (2)    Rental Value of the Property

The parties also disagree on whether a non-breaching buyer is entitled to

damages for the lost use of the subject property as measured by its rental value.

It is true that when a buyer breaches a land-sale contract after taking

possession of the land, the non-breaching seller is entitled to damages for the lost

use of the property during the buyer's possession. That is because the buyer's

possession ties up the seller's own property and prevents him from using it how he

chooses. In other words, the seller has given the buyer a resource—use of the

land—without receiving anything in return.

The same is not true of a buyer when a seller breaches a land-sale contract

before the time for performance. The buyer cannot be said to have lost the benefit

of using his own property, because the breach occurred before he acquired

ownership. Thus, when a seller breaches a land-sale contract before transferring possession to the buyer, the buyer cannot recover for the lost use of the subject property.

### B.   Consequential Damages

The parties also disagree on what evidence of consequential damages may be presented. Consequential damages are those damages reasonably foreseeable as a consequence of breach that were within the parties' contemplation at the time of contracting. *Garcia v. Absolute Bail Bonds, LLC*, 161 Idaho 616, 622 (2016).

### (1)   Liquidated Damages Clause

First, the parties disagree on whether Davis and Dahl may recover only those consequential damages specifically enumerated in the contract. Blast argues that the liquidated damages clause, in conjunction with the merger clause, limits the plaintiffs' consequential damages to "the costs of title insurance, escrow fees, appraisals, credit report fees, inspection fees, brokerage fees and attorney's fees." *Def.'s Memo. in Supp.* at 6, Dkt. 64-1. Plaintiffs respond that, as the Idaho Supreme Court held in *Lipsky*, that clause provides only a floor, but not the ceiling, for recoverable damages. 123 Idaho at 258.

Davis and Dahl have it right. As in *Lipsky*, the contract here identifies specific costs that "shall be returned" to the buyer if the seller breaches. *Def.'s*

*Memo. in Supp.* at 5, Dkt. 64-1; *Lipsky*, 123 Idaho at 258. But it does not indicate that those are the *only* recoverable costs. Indeed, it says precisely the opposite—that the buyers do *not* waive any other remedies. Dkt. 22-12 at 7 ("This shall not be considered as a waiver by BUYER of any other lawful right or remedy to which BUYER may be entitled."); *cf. Transport Truck & Trailer, Inc. v. Freightliner LLC*, CASE NO. CV-06-0282-JCC, 2008 WL 11349678, at *4–5 (D. Idaho June 11, 2008) (granting summary judgment against counter-claimant where contract specified that the listed remedies were exclusive).

Davis and Dahl may therefore present evidence of damages that were reasonably foreseeable and in the contemplation of the parties at the time of contracting, even if those damages were not specifically listed in the contract.

### (2)    Difference in Mortgage Rates

Next, the parties disagree on whether Davis and Dahl are entitled to recover the difference between what they would have paid at the contract mortgage rate and what they are paying at the higher mortgage for their replacement home.

The answer comes down to whether that increased cost was "specifically contemplated by the parties at the time of contracting." *Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho*, 115 Idaho 56, 61 (1988). That, in turn, is generally a question for the factfinder to resolve in view of all the evidence. *Strate v.*

*Cambridge Telephone Company, Inc.*, 118 Idaho 157, 160–61 (Idaho Ct. App. 1990) (citing *Traylor v. Henkels & McCoy, Inc.*, 99 Idaho 560 (1978)); *see also Appel v. LePage*, 135 Idaho 133, 137 (2000), overturned on other grounds by *Poole v. Davis*, 153 Idaho 605 (2012).

Without a fully developed record, the Court cannot determine as a matter of law whether the higher interest rate was within the parties' contemplation at the time of contracting. At this time, the Court therefore will not bar Davis and Dahl from offering evidence at trial as to the difference in mortgage rates.

**3.     Measure of Damages for Fraud and Violations of the Idaho Consumer Protection Act**

The parties also briefly discuss the measure of damages for fraud and violations of the Idaho Consumer Protection Act. To the extent the parties agree, the Court need not rehash those principles here. The only point of contention appears to be whether the out-of-pocket and benefit-of-the-bargain measures for fraud are exclusive.[6]

As Blast explains, Idaho courts have used both measures in fraud cases. But as Davis and Dahl correctly point out, the Idaho Supreme Court has also made

---

[6] And it is not even clear that the parties disagree on this point. Although Blast describes these two measures, it does not expressly state that they are the exclusive measures of damages for fraud claims. The Court will nevertheless address this issue here to avoid any confusion.

clear that those measures are not exclusive. *April Beguesse, Inc. v. Rammell*, 156 Idaho 500, 511 (2014). Rather, a plaintiff who proves fraud is entitled to "compensation for every wrong which is the natural and proximate result of the fraud." *Id.*; *see also Christiansen v. Syverson*, 516 F.Supp.3d 1151, 1159 (D. Idaho 2021).

If Davis and Dahl succeed on their claim for fraud, they will be permitted to offer evidence of any damages that were the "natural and proximate result" of the fraud.[7]

## ORDER

**IT IS ORDERED that** Plaintiffs' and Defendants' Motions in Limine (Dkts. 63 & 64) are **GRANTED in part and DENIED in part**. The parties may offer evidence at trial in accordance with the measures of damages set forth in this Order.

---

[7] This generalized conclusion may seem unhelpful to the parties. But, under the circumstances, this is as specific as the Court can be. Blast has provided a detailed review of the causation requirements for fraud damages. *Def.'s Memo. in Supp.* at 7–9, Dkt. 64-1. It has not, however, tied those principals to any particular category of evidence in this case. Consequently, it is unclear whether Blast is asking the Court to rule that, as a matter of law, Davis and Dahl cannot obtain certain damages on its fraud claim. Motions in limine are evidentiary, and without a clear request from Blast, the Court will not apply general principles of law to specific categories of evidence that the Court thinks may be offered.

DATED: May 3, 2023

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 16**