UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MYLES DAVIS, an individual, and JANELLE DAHL, an individual,, <br><br> Plaintiffs, <br><br> v. <br><br> BLAST PROPERTIES, INC. DBA B&B CUSTOM HOMES, an Idaho Corporation; TYLER BOSIER, an individual; BLAST HOLDINGS, LLC, an Idaho Limited Liability Company; and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 1:21-cv-00218-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it numerous pretrial motions: Defendants' Motion to Bifurcate (Dkt. 143), Plaintiffs' Motion for Judicial Notice (Dkt. 138), Plaintiffs' Motion in Limine re. Specific Performance (Dkt. 140), several other Motions in Limine (Dkts. 133, 139, 141, and 146), and Defendants' Motion for Relief from Trial Setting Order (Dkt. 154). The Court's ruling on each is explained below.

## BACKGROUND

Plaintiffs Myles Davis and Janelle Dahl filed this suit against Defendants Tyler Bosier, Blast Properties, Inc., and Blast Holdings, LLC over a dispute

involving a contract for the purchase of land and construction of a home. Plaintiffs bring claims for specific performance, breach of contract, fraud, violation of the Idaho Consumer Protection Act, fraudulent conveyance, and constructive trust. A seven-day jury trial is scheduled to commence on April 24, 2025.

The Court previously granted partial summary judgment to Plaintiffs on the breach of contract claim, finding that Blast Properties repudiated the contract. Dkt. 33 at 26-36. For relief on that claim, Plaintiffs seek specific performance, as well as damages to be determined by the jury. On the fraud claim, the Court has allowed Plaintiffs to seek punitive damages in addition to general damages. Dkt. 68. The claims for fraudulent conveyance and constructive trust were added late in the litigation after Plaintiffs identified several insider property transactions allegedly made for little or no consideration. For these claims, Plaintiffs' proposed remedies are the avoidance of the transfers, attachment of the properties, an injunction against further disposition by Defendants, appointment of a receiver, and imposition of a constructive trust. *Third Am. Compl.* at 14, Dkt. 123.

## ANALYSIS

The present motions raise a variety of issues related to the structure of the trial and the admissibility of disputed evidence. First, Plaintiffs again ask the Court to order specific performance—a request which they mask by making it in the form of a motion in limine. Dkt. 140. Second, Defendants move to bifurcate the trial to

separate evidence regarding the amount of punitive damages from the rest of the proceedings before the jury. Dkt. 143. Third, the parties disagree about whether the fraudulent conveyance claim should go to the jury. Dkt. 143. Fourth, Plaintiffs ask the Court to take judicial notice of average interest rates for a 30-year fixed rate mortgage, Dkt. 138. Fifth, the parties dispute the admissibility of various pieces of evidence. Dkts. 139, 141, 146.

1. **Timeliness**

A threshold consideration is that several of Defendants' responses were late. Pursuant to the trial setting order, the parties' motions in limine were due by March 24, 2025; responses were due seven days later; and replies were due three days after that. Dkt. 94. Defendants responded to two of Plaintiffs' motions in limine on March 31, but two other responses were not filed until April 2, apparently due to an administrative error. Realizing this mistake, Defendants moved for relief from the trial setting order. Dkt. 154.

The Court will grant that motion. A court may excuse a missed deadline "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect is a "somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 392 (1993) (internal quotations omitted). When deciding whether to excuse untimeliness, courts

consider all relevant circumstances, including (1) the risk of prejudice; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay, including whether it was within the party's reasonable control; and (4) whether the party acted in good faith. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Pioneer Inv.*, 507 U.S. at 395).

Here, first, the risk of prejudice is minimal. Plaintiffs suggest they were disadvantaged because counsel had to rush to file replies within 24 hours to meet the deadlines of the trial setting order. However, the trial setting order provided that reply briefs "shall be filed within 3 days of the date the response is filed." Dkt. 94 at 2. Because Defendants filed their responses on April 2, Plaintiffs therefore had until April 7 to reply (because April 5 fell on a Saturday). It was Plaintiffs' choice to rush to file the replies, notwithstanding Defendants' missed deadline.

Second, the length of the delay was only two days. For this reason, the impact on the proceedings is negligible, particularly because the parties previously agreed to delay the start of the trial by several days.

Third, on the other hand, the reasons for the delay are weak. Defense counsel's staff member explains that she intended to file all four responses on CM/ECF on March 31 and only realized on April 2 that two of them had not been successfully filed. Apparently, counsel has been on vacation, but he still had a professional obligation to ensure that all briefing was filed by the deadline—an

unfortunate but necessary consequence of scheduling a vacation less than a month before a trial.

Fourth, Defendants have acted in good faith. Defendants clearly made a mistake, and they quickly moved to correct it. Plaintiffs argue that metadata shows that the documents were created on March 31 (the day they were due) but modified on April 2 before they were submitted. It is not clear, however, why this should impact the Court's analysis. At the end of the day, the nature and effect of the delay is essentially the same, and the Court will not waste any more of its time over this dispute.

## 2. Specific Performance

Turning to the substance of the motions, the Court begins with Plaintiff's effort to obtain specific performance. Preliminarily, the Court is skeptical that a motion in limine is the appropriate vehicle for this request. Nonetheless, Plaintiffs are right that the factual record is sufficiently developed for a decision. In the interest of judicial efficiency, the Court will rule on specific performance now. For the reasons explained below, the Court finds that specific performance would be an unjust remedy for Defendants' breach of contract.

"There is no right to specific performance." *Kessler v. Tortoise Dev., Inc.*, 1 P.3d 292 (Idaho 2000). "Specific performance is an extraordinary remedy," designed to provide relief only "when legal remedies are inadequate." *Id.*

Generally, in actions for the breach of a contract for the sale of real property, "[t]he inadequacy of remedies at law is presumed." *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870, 874 (Idaho 2007). For service contracts, however, specific performance is almost never available due to the impracticality of enforcement. *See McCandless v. Schick*, 380 P.2d 893, 898 (Idaho 1963). Construction agreements are a prime example, where the contract's "provisions and stipulations are so multifarious and its obligations are so continuous as to make the effective enforcement of a decree impossible, or require constant and long-continued supervision by the court and further supplemental proceedings in order to enforce the defendant's compliance." *Suchan v. Rutherford*, 410 P.2d 434, 440 (Idaho 1966) (quoting 49 Am. Jur., Specific Performance, § 70, p. 85).

    Here, specific performance is both impractical and unjustified. Plaintiffs contracted not only to purchase a plot of land—a standardized plot in the subdivision Stella's Point—but also for Defendants to construct the home. If only the land were at stake, specific performance might be warranted. But specific performance of the construction contract would require extended work on the part of Defendants, and the Court would have to supervise that work. This sort of judicial oversight of a bitterly disputed building project is out of the question. Even an order transferring the property and allowing Plaintiffs to charge Defendants for another contractor's costs opens the door to protracted further Court involvement.

*See Kessler*, 1 P.3d at 298 ("[T]he court should retain jurisdiction to resolve all portions of the dispute between the parties and render equity to all parties without regard to the technical niceties of pleading and procedure.").

Blast Properties repudiated its contract, and now a jury will determine the appropriate damages. That is enough to do Plaintiffs justice for the breach. Limited evidence of the lot's uniqueness—the fact that it was large, south-facing, and bordered by a canal—does not justify specific performance under these circumstances. Consequently, the Court will deny with prejudice Plaintiffs' Motion in Limine Re: Specific Performance.

### 3. Bifurcation of Punitive Damages

The next question is whether to bifurcate the issue of punitive damages. Defendants propose that the jury should hear evidence pertaining to punitive damages separately, after the rest of the verdict. The Court agrees.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The decision to bifurcate is committed to the sound discretion of the trial court. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). In this case, evidence pertaining to the punitive damages amount would potentially prejudice Defendants on the remaining claims. Further, this issue raises distinct

factual considerations, meaning that there is little to be gained in terms of efficiency from putting the all the claims to the jury at the same time.

Accordingly, the Court will bifurcate the trial for purposes of determining punitive damages. The jury will first determine whether Plaintiffs are eligible for punitive damages, along with the other claims. If necessary, the jury will then reconvene to hear evidence regarding punitive damages and to reach a verdict on such an award.

### 4. Fraudulent Transfer and Constructive Trust

The Court now considers whether the claims for fraudulent transfer and constructive trust should go to the jury. Both parties agree that constructive trust is an equitable claim, and that the Court should rule on it after a separate hearing. Defendants argue that the same is true of fraudulent transfer, while Plaintiffs assert that the fraudulent transfer claim should go to the jury. The Court agrees with Defendants.

The Seventh Amendment enshrines the right to a jury trial for "Suits at common law." The Supreme Court has long interpreted this to mean "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 434 (1830)). The key question is the

nature of the remedy: "whether it is legal or equitable in nature." *Id.* at 42.

Here, the remedies for fraudulent conveyance are equitable in nature: avoidance of the property transfer, attachment, an injunction against further disposition by Defendants, and the appointment of a receiver. Idaho Code § 55-916. Although a fraudulent transfer claim can be legal in nature—this was the case in *Granfinanciera*, for example—that characterization applies to actions seeking to recover a fraudulent transfer of money. *See Granfinanciera*, 492 U.S. at 47-48. Such a recovery is virtually indistinguishable from an award of damages, which incontrovertibly falls to the jury. Here, on the contrary, the statute does not permit monetary relief but rather authorizes the Court take certain actions "[s]ubject to applicable principles of equity." § 55-916(c). Each remedy available under the statute clearly sounds in the Court's equitable powers.

This Court thus concurs with many others that there is no right to a jury trial for a claim of fraudulent transfer when monetary damages are not available. *See Kaisha v. Dodson*, No. 08-0225 SC, 2009 U.S. Dist. LEXIS 37554, at *1 (N.D. Cal. Apr. 21, 2009); *Cadle Co. v. Woods & Erickson, Ltd. Liab. P'ship,* 131 Nev. 114, 118, 345 P.3d 1049, 1053 (2015); *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP (In re BYJU's Alpha, Inc.)*, 661 B.R. 109, 119 (Bankr. D. Del. 2024). Plaintiffs quote *Siegel Mobile Home Group, Inc. v. Bowen*, 757 P.2d 1250, 1253 (Idaho Ct. App. 1988), for the principle that "the question of fraudulent intent is

one of fact and should be for the determination of the jury." They fail to mention, however, that this portion of the opinion was a review of that plaintiff's *unsuccessful* arguments. The trial court had granted summary judgment for the defendant, and the plaintiff appealed arguing that the matter should have gone to a jury. The appellate court did not identify any right to a jury trial for a fraudulent conveyance claim in Idaho, and it affirmed the trial court's grant of summary judgment. *Id.* at 1253-54. Though Plaintiffs are correct that intent is a question of fact, when a federal court sits in equity, the court is the finder of fact. That will be the case here.

For these reasons, the Court will rule on the fraudulent transfer and constructive trust claims at a hearing sometime after the jury trial. The jury will not take up either claim.

## 5. Judicial Notice

Next, Plaintiffs ask the Court to take judicial notice of the average interest rates for a 30-year fixed rate mortgage and the rate of market yield on U.S. Treasury securities.

Judicial notice of a fact is appropriate if the fact "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 20(b). This includes

interest rates and treasury bill rates. *See Transorient Navigators Co., S.A. v. M/S Southwind*, 788 F.2d 288, 293 (5th Cir. 1986); *Resolution Trust Corp. v. First American Bank* 155 F.3d 1126, 1129 (9th Cir. 1998).

Defendants do not dispute the accuracy of the rates at issue but argue that average mortgage rates are irrelevant because Plaintiffs have not established their credit worthiness or eligibility. This is far too narrow an understanding of relevance. Even if Plaintiffs were potentially ineligible for a specific rate, the fact that average mortgage rates more than doubled from 2020 to 2025 is certainly relevant for assessing losses in that respect. The Court has already decided not to bar Plaintiffs from presenting evidence as to the difference in mortgage rates, and there is no reason to deny judicial notice of average interest rates.

### 6. Motions in Limine

Finally, the Court turns to the motions in limine.

**A. Legal Standard**

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court."

*Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### B. Defendants' Motion in Limine

Defendants seek to exclude or restrict the following evidence: (1) Davis's opinion on the value of the subject property; (2) statements that Davis and Dahl have "already won" their breach of contract claim; (3) reference to expert witness Mark Richey as "the Defendants' expert"; (4) testimony that Davis and Dahl "lost" any particular interest rate; and (5) use of the term "fraudulent transfer."

First, there is no basis for excluding Davis's testimony about the property's value. "It is a settled rule in this state that the owner of property is a competent witness to its value. The owner's failure or inability to explain the basis for his appraisement may affect the weight of his testimony, but it does not disqualify him as a witness." *Smith v. Big Lost River Irr. Dist.*, 364 P.2d 146, 153 (Idaho 1961). Defendants argue that Davis's testimony in this area should be barred because he "disclaimed any such opinion" in a deposition *Defs.' Mem.*, 133-1 at 2. But Davis's statements at the deposition are a basis for impeachment, not exclusion. His testimony about the value of the property is squarely within the scope of Federal Rule of Evidence 701.

Second, Defendants have not justified a blanket prohibition on statements that Plaintiffs have "already won" the breach of contract claim. In some contexts that language might be unduly prejudicial, but the Court will take up such objections as necessary during the trial. Although damages have yet to be determined, Plaintiffs have indeed legally prevailed on the claim that Blast breeched the contract. In this regard, they would technically be the "winning" party even if a jury ultimately awarded only nominal damages.

Third, the Court does not entirely understand the dispute about Blast's expert witness, Mark Richey. The Court previously allowed Plaintiffs to use Mr. Richey's expert report as a basis for calculating damages in their application for a writ of attachment. Dkt. 111 at 14-15. The Court did not, however, say that Plaintiffs could proffer Mr. Richey as their own expert at trial, as Defendants seem to believe. *See id.* at 14 ([T]he point of these rules is to level the playing field at trial. This case is not at trial . . . .") Because the Court has not ruled that Plaintiffs may offer Mr. Richey's expert testimony in their case in chief, there is no problem with him being described as "Defendants' expert."

Fourth, there is no merit to Defendants' argument that the statute of frauds precludes testimony that Plaintiffs "lost" an interest rate. To start, the statute of frauds is beside the point because this is not an action to enforce a verbal contract for a loan at a particular rate. The point of the testimony is simply to present

evidence of damages. Moreover, there are written communications about prevailing interest rates, including a pre-approval letter.

Fifth, Defendants argue that Plaintiffs should use the term "voidable transfer" rather than "fraudulent transfer." Regardless of how the claim is labeled, it will not be going to the jury, as discussed above. To the extent that terminology might be relevant to the claims being tried by the jury, the Court is not persuaded that it is so prejudicial as to justify a prohibition.

Consequently, Defendants' Motion in Limine is Denied.

### C. Plaintiffs' Motions in Limine

Plaintiffs, for their part, seek to exclude (1) testimony about the cost of completion from defense expert Tyler Gingrich; (2) evidence regarding the parties' contract negotiations and settlement discussion; (3) testimony from non-experts Shaun Urwin and representatives from KNT Investments, LLC; and (4) any reference to Janelle Dahl's former husband, Robert Dahl.

First, Mr. Gingrich's testimony about the cost of completing construction of the property is admissible. FRE 702 requires expert testimony to be both relevant and reliable. Specifically, expert testimony is admissible if "it is more likely than not that: (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Plaintiffs complain that Mr. Gingrich admitted in a deposition that he could not determine the cost of certain "handwritten additions to the electrical work." *Pls.' Mem.* at 3, Dkt. 139. But his uncertainty regarding this one confusing aspect of the contract does not undermine the reliability or helpfulness of his testimony. Similarly, his testimony is admissible notwithstanding his inability to answer Plaintiffs' speculative questions like whether current subcontractors would honor previous pricing. *Id.* at 4.

Second, although the trial is obviously not an opportunity to relitigate arguments about breach and settlement, evidence regarding contract negotiations and settlement discussions could well be relevant to the issues before the jury. The jury is tasked with determining damages from the breach, and "consequential damages are not recoverable unless they were specifically contemplated by the parties at the time of contracting." *Browns Tie & Lumber Co. v. Chicago Title Co. of Idaho*, 764 P.2d 423, 428 (Idaho 1988). For example, the jury will presumably need to determine whether the parties contemplated the possibility of increased mortgage rates. *See* Dkt. 82 at 13-14. This will almost certainly require the jury to consider evidence related to the contract negotiations and formation. Likewise, it is entirely possible that evidence from settlement discussions will shed light on the

parties' understandings at the time of contracting. For these reasons, the Court will not issue a blanket prohibition on this evidence. Obviously, the matter will need to be revisited during trial, and the parties are cautioned to carefully approach the issue and to seek a final decision from the Court before the evidence is presented to the jury.

Third, there is no merit to Plaintiffs objections to potential non-expert testimony from Shaun Urwin or representatives from KNT Investments. Mr. Urwin is a real estate agent with the brokerage firm that represented Blast Properties in the purchase and sale agreement, and he was copied on several emails between the parties. He also has direct knowledge of the Stella's Point subdivision, where the disputed property is located, as well as builders' general practices in the area. His testimony is admissible as a lay witness under FRE 701.

KNT Investments was the developer of Stella's Point, and it owned the lot that Blast Properties agreed to sell to Davis. Information about that transaction is clearly relevant to Plaintiffs' fraud claim, which includes the allegation that Blast Properties misrepresented its ownership of the lot. Testimony about other transactions between Blast Properties and KNT Investments could well be relevant too. Therefore, the Court will not prohibit this testimony.

Fourth, the Court agrees with Plaintiffs that any reference to Robert Dahl is irrelevant and prejudicial. Robert Dahl was a wine entrepreneur in Napa Valley.

About a decade ago he murdered an investor after losing a large amount of money, then he killed himself. This tragic murder-suicide received significant press coverage, and Defendants have proposed a voir dire question about jurors' knowledge of a CBS episode titled *Grapes of Wrath: A Tale of Money, Wine and Murder in Napa*. Plaintiffs are correct that this will only confuse and prejudice the jurors. While the Court will not speculate on the genuineness of Defendants' motives for suggesting the question—which, supposedly, they selflessly proposed to ensure jurors are not biased against Plaintiffs—it is clearly inappropriate to reference these irrelevant and sensational events.

In sum, Plaintiffs' Motions in Limine are denied, except the motion to exclude reference to Robert Dahl.

### ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Relief from Trial Setting Order (Dkt. 154) is **GRANTED**.

2. Plaintiffs' Motion in Limine re. Specific Performance (Dkt. 140) is **DENIED with prejudice**.

3. Defendants' Motion to Bifurcate (Dkt. 143) is **GRANTED**.

4. Plaintiffs' Motion for Judicial Notice (Dkt. 138) is **GRANTED.**

5. Defendants' Motion in Limine (Dkt. 133) is **DENIED**.

6. Plaintiffs' Motion in Limine Re. Exclusion of Testimony / Evidence Regarding Cost of Completion by Tyler Gingrich (Dkt. 139) is **DENIED**.

7. Plaintiffs' Motion in Limine to Exclude Improper Evidence and Testimony Regarding Breach of Contract and Formation (Dkt. 141) is **DENIED.**

8. Plaintiffs' Motion in Limine to Exclude Any Reference to Robert Dahl (Dkt. 146) is **GRANTED**.

DATED: April 15, 2025

B. Lynn Winmill
U.S. District Court Judge